RENDERED:  AUGUST 14, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0693-MR

CATHERINE SCHUSTER                                        APPELLANT

v.      APPEAL FROM JEFFERSON FAMILY COURT
HONORABLE DENISE D. BROWN, JUDGE
ACTION NO. 23-CI-501388

TUSHAR NAYAR                                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE:  This appeal challenges the Jefferson Family Court's awarding joint custody and equal timesharing and its declining to award child support in the parties' dissolution decree.  We affirm.

## FACTS

Dr. Catherine Schuster ("Mother") and Dr. Tushar Nayar ("Father") were married in 2014.  They have two minor, school-age children.

Mother filed a petition to dissolve the parties' marriage in early May 2023, stating the parties had separated just a few days beforehand. Mother also stated she had recently been granted an Emergency Protective Order ("EPO") against Father. Mother requested that she be granted sole custody and stated child support should be set according to the Kentucky child support guidelines.

In July 2023, Mother filed a motion for contempt against Father in the domestic violence case. She asserted he had violated the EPO's no-contact provision by contacting her by text and/or email over 800 times between May and July 2023. Mother obtained a Domestic Violence Order ("DVO") against Father in November 2023, and her contempt motion proceeded to a hearing in early December 2023. At the end of the early December 2023 hearing, the family court found Father to be in contempt for violating no-contact provisions in the EPO.[1]

As the divorce trial approached, Father filed a motion requesting the court bring the DVO case file to trial. He stated he was seeking joint custody of the children. Father's amended witness list stated he planned to call Dr. Karen McCurry to testify to his treatment plan and compliance therewith.

---

[1] The complete record for the domestic violence case, a separate action from the divorce action, is not before us. The same judge presided over both the domestic violence case and the divorce case between Mother and Father. The court made some findings about the domestic violence proceedings in the divorce decree. A recording of the hearing on the contempt motion filed by Mother in the domestic violence case was included in the record on appeal from the divorce decree, but the order finding Father in contempt for violating the EPO was not.

The court heard testimony from both parties and from other witnesses including Dr. McCurry, Father's treating therapist, on the scheduled February 2025 trial date. A guardian *ad litem* ("GAL") also participated at trial to represent the children's interests. At the end of the trial, the court invited both parties and the children's GAL to submit proposed findings of fact and conclusions of law.

In April 2025, the family court entered the divorce decree with findings of fact and conclusions of law. The court awarded joint custody and equal timesharing to the parties.

Mother filed a timely motion to alter, amend, or vacate or for further findings—in which she raised issues about custody and parenting time. The family court denied this motion, and Mother filed a timely appeal.

Further facts will be provided as needed in our analysis.

## ANALYSIS

### Standard of Review—Custody and Parenting Time

Binding precedent from our Supreme Court states:

an appropriate standard of review in a child custody case is as follows:

> Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's

> ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

*Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008) (footnote omitted).

With this standard of review in mind, we consider Mother's arguments about custody and time sharing. First, we consider Mother's argument that the family court failed to comply with KRS[2] 403.315 in finding joint custody and equal timesharing to be in the children's best interests despite the DVO and contempt finding against Father.

## Family Court Did Not Violate KRS 403.315 or Abuse Its Discretion in Awarding Joint Custody and Equal Timesharing

As Mother emphasizes, Father had a DVO entered against him, and he had been found in contempt for violating no-contact provisions in the EPO. In fact, the family court entered findings about the domestic violence proceedings in the divorce decree, stating:

> 7. On May 5, 2023, Petitioner [Mother] filed a petition for an emergency protective order, alleging Respondent

---

[2] Kentucky Revised Statutes.

-4-

[Father] made statements of self-harm and threatened to take the children. The petition also alleged Respondent had physically assaulted Petitioner.

8. The petition was granted on the same day and a no-contact Emergency Protective Order was entered protecting Petitioner and the minor children. Under the order, Respondent was vacated from the marital residence.

9. On June 14, 2023, the Emergency Protective Order was amended to remove the children. The protection for Petitioner remained in effect.

10. On November 1, 2023, this court entered a no-contact Domestic Violence order protecting Petitioner only from Respondent for three (3) years, based on a finding that Respondent committed an act of domestic violence against Petitioner and it is likely to occur in the future. Specifically, the court found Respondent made threats to harm himself, including when the children were in his care. Petitioner was also awarded temporary custody of the children. The DVO is set to expire on October 31, 2026.

11. On December 8, 2023, Respondent was found in contempt for violating the Emergency Protective Order by sending Petitioner over 800 text messages and emails. Respondent stopped sending the messages after Petitioner filed her contempt motion on July 25, 2023.

(Pages 2-3 of Findings of Fact, Conclusions of Law, Judgment and Decree (hereinafter "decree") attached as Appendix 1 to Appellant red brief, also located at Record on Appeal, ("R."), pp. 502-03).

Neither party challenges the accuracy of the family court's factual findings regarding the domestic violence case proceedings. However, Mother

-5-

argues the family court violated KRS 403.315 and abused its discretion in awarding Father joint custody and equal timesharing.

Mother admits the family court stated it would not be applying the usual presumption that joint custody and equal parenting time are in the children's best interests,[3] given the prior history of domestic violence. But she claims that despite this statement, the family court effectively did apply a presumption that joint custody and equal timesharing were in the children's best interests.

We disagree with Mother's assertion that the family court violated KRS 403.315 and applied a presumption in favor of joint custody and equal timesharing despite the history of domestic violence. The fact that the family court ultimately found joint custody and equal timesharing to be in the children's best interest does not show that the court applied a presumption in favor of joint custody and equal timesharing. The family court stated it was not applying such a presumption. Also, it entered detailed factual findings about the prior history of domestic violence, and it expressed clear reasoning for its conclusion that joint custody and equal timesharing were in the children's best interests.

Moreover, the version of KRS 403.315 in effect during the 2025 custody trial and post-trial motion proceedings does not expressly prohibit awarding joint custody and equal timesharing under all circumstances any time

---

[3] *See generally* KRS 403.270(2).

-6-

there is a history of domestic violence. Instead, the effective version of KRS 403.315 simply directed that the usual statutory presumption in favor of joint custody and equal timesharing did not apply to the party against whom a DVO has been entered.[4]

The court noted it was undisputed that the children wanted to spend more time with Father than they received under the current parenting time schedule then in effect. The court also expressly noted the existence of the DVO and the contempt finding for violating no-contact provisions in the EPO. The court stated that the EPO alleged that Father had expressed an intention to harm himself and threatened to take the children and that Father had physically assaulted Mother.[5]

Nonetheless, the court effectively determined that, under the unique facts of this case, the concerns posed by the prior history of domestic violence had been overcome. The reasons given included: Father's demonstrating that he had

---

[4] KRS 403.315, as amended in 2026, now contains a subsection 2 providing:

> (2) There shall be a presumption, rebuttable by a preponderance of the evidence, that joint custody and equally shared parenting time is not in the best interests of the child if the court finds that a party has committed two (2) or more acts of domestic violence and abuse as defined in KRS 403.720 against another party.

2026 Ky. Laws ch. 92 (SB 122). This bill does not contain an emergency clause allowing for it to take immediate effect nor state it must be applied retroactively. So, the new rebuttable presumption stated in the 2026 version of KRS 403.315-does not apply here.

[5] Unfortunately, we do not have the full text of the EPO, DVO, or other portions of the domestic violence case proceeding record to review. Based on other statements in the record for this case, Mother's petition for a protective order apparently alleged an incident in which Father somehow forced Mother to go upstairs, causing bruising to her.

not engaged in further acts of domestic violence in nearly two years; that Father sought treatment for mental illness and complied with his treatment plan; that Father had a strong bond with the children; and that, since the separation, Father had gradually gained more unsupervised parenting time with Mother's agreement.

The court specifically found: "Neither party raised any significant safety concerns about the children while in the care of the other party. The court did not hear any testimony indicating the children are unsafe in the care of either parent." The court also found: "Both parties have suitable homes for the children and the children are fully integrated into both homes." (Page 6 of decree, R., p. 506). Although it took note of the prior finding of domestic violence against Father, the court found there were no allegations that Father had ever been physically abusive or aggressive with the children.

The court found Mother had previously received mental health treatment from May 2022 until September 2023. It noted Mother expressed a belief that her mental health had improved since she ended contact with Father. It also noted Mother expressed concern that direct contact and co-parenting with Father would negatively affect her mental health since he continued to be a "trigger" for her due to his past actions. (Page 7 of decree, R., p. 507).

The court also made detailed findings about Father's mental health and treatment. The court found Father had been hospitalized for mental health

issues, including thoughts of self-harm, when the parties separated in May 2023. And the court further found Father's hospitalization led to his receiving a mental health diagnosis and that Father had been receiving treatment for this condition, including medication and therapy. The court found Father was compliant with his treatment and there had been "no reported issues" and no reports of thoughts of self-harm since he obtained treatment. (Page 7 of decree, R., p. 507).

The court discussed the testimony of clinical psychologist Dr. Karen McCurry. This included her assessment that Father had been consistent in attending therapy, receptive to treatment, and motivated to change, and that his behavior had now stabilized and did not resemble the behavior he engaged in at the time of separation. The court noted Dr. McCurry testified to having no safety concerns about Father's parenting and that she believed Father strove to be a healthy person and parent.

The court also discussed the testimony of Father's significant other, who had observed Father's parenting his children and reported no concerns about his parenting choices. The court noted Father's significant other had two children of her own from another relationship and reported that she trusted Father to watch her own children at times when she was unavailable.

The court also found the children's nanny testified to their being upset and confused at the time of separation, but that they had settled into a routine in the

summer of 2024, and they remained stable. The court found that Mother and the nanny testified to Father's phone calls with the children being excessive in length and/or frequency and disruptive to the children's routine. The court also found Mother testified to Father being a "Disney dad" who only did fun things with the children. (Pages 5–6 of decree, R., pp. 506–07).

In its conclusions of law, the court stated it would not apply a rebuttable presumption that joint custody and equal timesharing would be in the children's best interest. Nonetheless, it found joint custody and equal timesharing in the children's best interest despite Father's prior history of domestic violence:

> While Respondent [Father] did commit acts of domestic violence around the end of the marriage, it is clear to the court that this has not substantially disrupted the parent-child bond between Respondent and the minor children. In addition, the court believes Respondent has engaged in, and continues to engage in, effective treatment for the underlying mental health condition that contributed to his previous actions. Respondent has not shown similar behavior since his diagnosis and treatment. Further, while the parties have different parenting styles and preferences, the court does not have any safety concerns about either party's parenting and does not believe these differences prevent these parties from having an effective co-parenting relationship and raising loving, successful children.
>
> 5. The court concludes it is in the best interest of the minor children to have equal time with each parent. Again, while the court is not bound by the rebuttable presumption in this case, the court still concludes an equal parenting time schedule is in the best interest of the children. This is consistent with the wishes of the

children, as expressed through their Guardian ad Litem in this action. Both parents are active, loving, parents to the children. Both parents show a commitment to raising happy, successful children. Finally, while the Respondent engaged in abusive behavior to Petitioner prior to and around the date of separation, Respondent has since sought mental health treatment and has not shown any additional abusive behavior for a period of almost two (2) years. In this same time period, the children's relationship with Respondent has normalized and the court believes it is in the[] best interest of the children to have a parenting time schedule that emphasizes the equal role of each parent.

(Pages 14–15 of decree, R., pp. 514–15).

Based on the record before us, the family court's findings that Father had not engaged in further abusive behavior for nearly two years is supported by substantial evidence. Similarly, the family court's findings that Father had been consistent in seeking appropriate mental health treatment and in complying with treatment recommendations (including taking prescribed medications and attending therapy) is also supported by substantial evidence—including Father's testimony and the testimony of his therapist.[6]

---

[6] We recognize that perhaps another factfinder might have viewed Dr. McCurry's testimony with more skepticism given her admission on cross-examination that she was not aware of his having sent more than a couple of text messages to Mother following entry of the EPO and that she and Father had not discussed his having violated a court order. Nonetheless, the family court had the sole prerogative to assess the credibility of witnesses and to weigh the evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Moreover, while we recognize that often there are legitimate, significant concerns about placing children in the care of parties who have been found to have engaged in domestic violence, we discern no abuse of discretion in the family court's awarding joint custody and equal parenting time under the unique facts here.[7]  This is especially true considering the passage of nearly two years between the acts of domestic violence found to have occurred in May 2023 and the divorce decree's entry in April 2025.  And it is also especially true considering evidence of Father's having consistently sought treatment for mental health issues during this two-year period and of there being no further acts of domestic violence since the separation.  Also, supportive as evidence is the fact that the parties entered into agreed orders providing for Father to gradually attain increasing amounts of unsupervised visitation with the children.  Although the parties may have different parenting styles, the family court's finding that no significant safety issues were reported as Father's time with the children gradually expanded is supported by substantial evidence.

Regardless of whether we or some other court might have made a different ruling, the family court's findings were supported by substantial evidence, and it did not abuse its discretion in awarding joint custody and equal

_____

[7] Our holding is limited to the facts of this case, applying the version of KRS 403.315 in effect at the time of trial and entry of the divorce decree.

timesharing despite the prior history of domestic violence under the unique facts here. Thus, we must affirm its custody and timesharing decision. *See Coffman*, 260 S.W.3d at 770.

We also reject Mother's contention that the family court failed to comply with KRS 403.315 by not expressly discussing "all" KRS 403.270(2) factors about best interests. For example, Mother points out the family court did not discuss Mother's mental health in its conclusions of law despite Mother's testifying that joint custody and equal timesharing would have a negative impact on her mental health. However, as previously noted, the family court did discuss Mother's testimony about her mental health in its findings of fact. The court did note Mother's expressions of concern about the effect of co-parenting and direct contact with Father in its factual findings. Moreover, the family court also made findings on other relevant factors regarding the children's best interests.

KRS 403.315 (in the version applicable during all relevant times here) states that in cases where a DVO was entered against a party: "The court shall weigh **all** factors set out in KRS 403.270 in determining the best interest of the child." (Emphasis added.) And KRS 403.270(2)(f)[8] does identify as one best interest factor: "The mental and physical health of all individuals involved."

---

[8] Like KRS 403.315, KRS 403.270 was also amended in 2026—without an express statement that this amendment applies retroactively or took effect immediately. We apply the version of KRS 403.270 in effect at the time of the custody trial and entry of the divorce decree.

-13-

As previously noted, the court made findings concerning both parties' mental health. The court also found both parties had no physical health issues affecting its custody determination. We also note the court made findings relating to the children's physical health and their mental and/or emotional health.

Moreover, the court also made findings regarding other listed KRS 403.270(2) factors including the wishes of the parties and their children, and the children's adjustment and proximity to their home, school, and community. In fact, the court found: "The children attend private school and this will not be affected by the division of time between the homes. Their community involvement and extracurricular activities will also not be impacted by the division of time between the homes." (Page 6 of decree, R., p. 506). The court also made findings about the motivations of both parties, finding that both were active, loving parents who were committed to raising happy and successful children.

Perhaps the court did not make explicit findings about whether each parent would permit the other substantial contact and communication, although it made detailed findings about both parties' complaints about the other party's communications. Moreover, in ordering that each party receive equal parenting time and that the children would be provided with a device to contact the non-possessory parent during daytime hours, the court facilitated the children's having substantial contact and communication with each parent.

The court made no findings about *de facto* custodians but there appears to be no evidence the children were ever placed in the care of a *de facto* custodian. *See* KRS 403.270(2)(h)–(j). The court did make relevant findings about the prior domestic violence history, finding this prior history had not affected Father's relationship with the children and Father had consistently sought mental health treatment. *See* KRS 403.270(2)(g).[9]

To the extent that the family court did not expressly weigh all KRS 403.270(2) factors despite the then-effective version of KRS 403.315's requirement that it do so, we conclude the error was harmless given the detailed findings made here and the unique facts of this case. *See generally* CR[10] 61.01. In our estimation, the family court made detailed best interest findings of all relevant KRS 403.270(2) factors,[11] and it did not abuse its discretion in ultimately awarding joint custody and equal timesharing.

---

[9] At the time of trial, KRS 403.270(2)(g) called for consideration of any "finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party." This statutory subsection further stated: "The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program[.]"

[10] Kentucky Rules of Civil Procedure.

[11] We reject Mother's assertion that the family court failed to make required best interest findings and/or failed to adequately analyze the best interest standards expressed in KRS 403.270. This case is substantively distinguishable from *Anderson v. Johnson*, 350 S.W.3d 453 (Ky. 2011), in which the family court's conclusion of law that it was not in the minor child's best

Moreover, also relevant to domestic violence-related issues, we reject

Mother's contention that the family court's custody order must be set aside

because it was not consistent with the recommendation of the children's GAL.

Mother points out that the GAL proposed that the court should award Mother sole

custody until the DVO expires and that Mother and Father have a 60/40

timesharing schedule. The GAL's proposal also suggested that joint custody

commence upon the expiration of the DVO. (Perhaps the GAL was concerned

about how the parties could make decisions together while the no-contact

provisions of the DVO still applied.)

As Mother asserts, the GAL was appointed to represent the children

and binding authority recognizes that a GAL for minor children is charged with

---

interest to move was not supported by any factual findings. *See id*. at 458–59. Again, the family court here made detailed findings on relevant KRS 403.270 factors.

Similarly, this case substantially differs from *Glodo v. Evans*, 474 S.W.3d 550 (Ky. App. 2015), in which the family court made only a conclusory finding that the mother was an unfit parent who had been incarcerated and had a substance abuse problem in resolving a custody dispute between a parent and non-parents (grandparents). *See id*. at 553–54. Moreover, unlike *Glodo*, the present case involves a custody dispute between the children's parents so the clear and convincing evidence standard governing custody disputes between parents and non-parents does not apply. *See id*. at 554.

Furthermore, this case also substantially differs from *Scheer v. Zeigler*, 21 S.W.3d 807 (Ky. App. 2000), in which we overruled prior precedent regarding custody modification and remanded for the family court to decide the custody modification request pursuant to the standard set forth in KRS 403.340. *See id*. at 813–14. Here, we perceive no need to remand for the family court to decide custody anew pursuant to applicable law such as KRS 403.315. The family court was obviously aware of applicable statutes such as KRS 403.315 and KRS 403.270 and its decision was not inconsistent with the standards set forth in these statutes at the time of trial and entry of the divorce decree.

-16-

arguing for the children's best interests, which are not necessarily synonymous with the children's expressed wishes. *See generally Morgan v. Getter*, 441 S.W.3d 94, 108, 117 (Ky. 2014).

On the other hand, as Father points out, a GAL plays a different role than a Friend of the Court who is appointed by a court to investigate custodial issues and to make reports and recommendations. *Id*. at 111. *See also* KRS 387.305; KRS 403.300. Father argues the family court was not required to give more weight to the children's GAL's opinion and recommendations than to those espoused by Mother's or Father's trial counsel.

While both parties make good points, we ultimately discern no reversible error in the family court's not adopting the GAL's recommendations concerning custody and timesharing.[12] While certainly the family court should and did consider the GAL's arguments along with those of the parties, Mother cites no authority which requires that the family court must accept a GAL's assessment of the children's best interests or adopt his/her recommendations for custody and timesharing. Ultimately, it is the family court's responsibility to assess the

---

[12] The DVO was set to expire October 31, 2026—about a year-and-half after entry of the divorce decree and about twenty months after the custody trial. Neither party's briefs discussed whether the GAL's proposal for Mother to have sole custody until the DVO expired is consistent with Kentucky statutes about establishing or modifying child custody and parenting time, such as KRS 403.270, KRS 403.320, and KRS 403.340, nor precedent construing such statutes.

-17-

children's best interests and to make decisions about custody and timesharing accordingly. *See generally* KRS 403.270; KRS 403.320.

**Family Court Did Not Abuse its Discretion in Awarding Joint Custody and Equal Timesharing Despite Finding the Parties had Some Difficulties in Communicating and Cooperating With Each Other**

Mother argues that the family court erred in awarding joint custody and equal timesharing because, in her view, the parties were unable to communicate and cooperate with one another. Certainly, courts may consider evidence of the parties' being unable to communicate or cooperate with one another in deciding whether equal timesharing is in a child's best interest. *See generally Barnett v. White*, 584 S.W.3d 755, 760–62 (Ky. App. 2019). Where a court makes properly supported findings that the parties were unable to effectively communicate or cooperate with little to no improvement over the years, such properly supported findings can support the court exercising its discretion to decline to order equal timesharing despite statutory presumptions that joint custody and equal timesharing are in children's best interests. *See id*.

However, in the instant case, the family court did not find that the parties were completely unable to communicate or cooperate with each other. The court noted Mother's objection to Father's requests for direct communication, including Mother's concern that such communication could negatively affect her mental health. The court found the parties currently communicated through third

parties, including their attorneys and Mother's mother. The court also found that the use of such third parties for communication often resulted in delays in conveying important information.

The court ordered the parties to "continue to use Google calendar, or Our Family Wizard (if agreed to in writing), for scheduling the children's events and activities." (Page 19 of decree, R., p. 519). The court also ordered the parties to use Our Family Wizard (a court-approved parental communications application) for other communications. The court acknowledged Mother's concerns about direct communication, but it found direct communication in the children's best interest to allow "for faster and clearer communication on important issues related to the children's safety and well-being." (Page 20 of decree, R., p. 520).

The court stated Mother may use a third party to send messages through Our Family Wizard if she preferred. Moreover, the court noted it retained the ability to modify decree provisions about communication, if Father proved unable to communicate with Mother in an appropriate manner. The court also stated that discussion on Our Family Wizard must be limited to issues about co-parenting the children and shall be conducted in a respectful manner with no disparaging comments about the other party's parenting choices or relationship with the children. The court also concluded the parties could telephone each other directly if and only if an emergency regarding the children's health or safety

occurred. The court further directed that neither party shall make disparaging remarks about the other (or allow others to do so) in front of the children.

Despite noting some prior conflicts and difficulties in communication, the family court made findings that the parties were able to communicate—albeit through third parties and Google calendar. The family court also essentially found the parties had been able to agree on many important matters—as it made findings about the parties' agreeing to the gradual expansion of Father's parenting time, division of marital assets, and resolution of how to split the children's health costs (including insurance and unreimbursed expenses).

In sum, the family court's findings indicate that the parties have been able to communicate and to agree on how to resolve many matters. Moreover, the court provided directions in the divorce decree about future communications, aimed at helping the parties to communicate and co-parent in a constructive and respectful manner. Thus, we discern no abuse of discretion in the family court's awarding joint custody and equal timesharing despite the parties' past difficulties with communications. *See Barnett*, 584 S.W.3d at 761 (citing *Squires v. Squires*, 854 S.W.2d 765, 768–69 (Ky. 1993)) ("While joint custody should not be automatically rejected where parents cannot cooperate at present, especially if they are in the midst of a divorce, joint custody can be appropriate if it appears that with time parents will be able to achieve an acceptable level of cooperation.").

**No Reversible Error in Family Court's Consideration of Father's Treating Therapist's Testimony**

Mother argues the family court improperly relied on opinion testimony from Dr. Karen McCurry, a clinical psychologist and Father's treating therapist. Mother points out her trial attorney objected to Dr. McCurry's testifying because Father had not identified Dr. McCurry as an expert witness prior to trial. She also emphasizes that Father's counsel represented that Dr. McCurry would testify as a lay witness rather than an expert witness.

Based on our review of the trial recording, the family court also orally stated that Dr. McCurry would be testifying as a fact witness, and Mother's trial counsel said "okay" or something to that effect without further objecting.

Dr. McCurry stated at trial that she did not intend to testify as an expert witness or a custody evaluator but instead simply as a fact witness who could testify to her treating Father and to his compliance with his treatment plan. She also admitted she did not directly observe Father with the children.

Father's amended witness list, filed prior to trial, indicated he intended to call Dr. McCurry as a witness and that she would testify to his compliance with his treatment plan. Father did not state he would be calling Dr. McCurry as an expert witness, however. *See generally* CR 26.02(4).

Mother quotes the family court's findings about Dr. McCurry's opinions, including that Father's behavior had stabilized and he was not

demonstrating the concerning behaviors which occurred during the May 2023 separation and his hospitalization. She also quotes the family court's finding that Dr. McCurry expressed no concerns about Father's ability to safely provide care for the children. Mother admits that Dr. McCurry is a trained psychologist.

Mother asserts that Dr. McCurry was not qualified to testify as an expert yet offered opinion testimony on scientific, technical, or other specialized knowledge. In particular, she complains that Dr. McCurry's conclusions about Father's behavior having stabilized and her assessment of a lack of safety concerns with Father's parenting were based on specialized knowledge which is, in her view, outside the scope of proper lay witness opinion testimony.

Father responds by arguing that Dr. McCurry properly testified as a lay witness to her own observations about Father's progress and treatment which she made while providing therapy to him. While Father acknowledges that Dr. McCurry testified to her education and training as a clinical psychologist and used some clinical terms in her testimony, he suggests she still properly testified as a lay witness to matters within her personal knowledge as Father's treating therapist.

In the alternative, Father contends that, to the extent that the family court allowed Dr. McCurry to testify as an expert (or concerning opinions about specialized matters which may properly be offered only by expert witnesses), there was no abuse of discretion and/or any error was harmless. *See McDaniel v.*

*Commonwealth*, 415 S.W.3d 643, 655–56 (Ky. 2013) (recognizing a lower court has discretion whether a witness qualifies as an expert and concluding that the improper offering of expert opinions by a lay witness amounted to harmless error since the expert opinions offered did not substantially influence the resolution).

As Mother points out, the scope of proper opinion testimony from lay and expert witnesses is set forth in KRE[13] 701 and KRE 702.

KRE 701 states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(a) Rationally based on the perception of the witness;

(b) Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and

(c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

KRE 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the proponent demonstrates to the court that it is more likely than not that:

(1) The testimony is based upon sufficient facts or data;

---

[13] Kentucky Rules of Evidence.

(2) The testimony is the product of reliable principles and
methods; and

(3) The witness' opinion reflects a reliable application of
the principles and methods to the facts of the case.

We reject any apparent contention by Mother that lay witnesses may not ever offer any type of opinion testimony.[14] Moreover, having carefully reviewed Dr. McCurry's testimony and the family court's findings based on this testimony, we discern no reversible error in this regard—whether the testimony is considered entirely lay witness testimony or whether some opinions offered might normally come within the purview of expert testimony. *See generally* KRE 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence

---

[14] Mother claims the Kentucky Supreme Court has held that lay witnesses cannot properly give opinion testimony, citing *Time Warner Cable, Inc. v. Smith*, 635 S.W.3d 82 (Ky. 2021). But our Supreme Court's holding was much more limited than Mother suggests. In fact, our Supreme Court held a worker's compensation claimant—like any other lay witness—can testify to facts about his/her psychological (as well as physical) medical condition, but he/she cannot testify to his/her medical prognosis, which must be established by medical testimony. We do not read *Smith*, 635 S.W.3d at 88, as categorically holding that lay witnesses may never offer opinion testimony on any subject. *See also* KRE 701.

Mother also asserts that expert testimony must be offered on any issue which is not a matter of common knowledge, citing *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676 (Ky. 2005). But *Miller* simply held that since the standard of care for drawing blood in a medical facility is not within the common experience of laypeople, expert testimony about the standard of care for phlebotomists was required. *Id*. at 680–81. Dr. McCurry did not testify to any medical standard of care but simply to her observations about Father's compliance with his treatment plan. Nor did she go beyond the scope of lay witness testimony in testifying that she had no safety concerns about his parenting based on her interactions with him, including his consistent attendance at therapy and the statements he made to her. And although she acknowledged that she did not directly observe his parenting the children and her assessments depended largely on what he reported to her, the family court had the prerogative to weigh the weight and credibility of the evidence. *See, e.g.*, *Moore*, 110 S.W.3d at 354. *See also* CR 52.01.

unless a substantial right of the party is affected[.]"). *See also* CR 61.01 (no error in admitting evidence is grounds for disturbing a judgment unless refusing to afford relief would be "inconsistent with substantial justice" and further stating: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Mother was notified prior to trial of Father's intent to offer Dr. McCurry's testimony about his compliance with his treatment plan and the fact that at least one other witness testified to perceiving no safety concerns with Father's parenting after observing him interacting with the children. We find no reversible error in the family court's consideration of Dr. McCurry's opinion that Father's caring for the children posed no safety concerns.

Moreover, the court's consideration of Dr. McCurry's opinions about Father's behavior having stabilized and no longer resembling the behavior he was engaging in at the time of separation and his hospitalization (based on his self-reports during therapy) also did not amount to reversible error. As the family court further found, there was no testimony or other evidence showing that Father had engaged in any further abusive behavior or made statements about intending to harm himself for nearly two years prior to trial.

**Child Support**

**We Review Child Support Issue for Palpable Error Given Mother's Failure to Show How This Issue was Preserved for Our Review**

Generally, we review child support decisions for abuse of discretion. *See, e.g.*, *Davis v. Davis*, 720 S.W.3d 622, 628 (Ky. App. 2025). However, unpreserved issues may be reviewed solely for palpable error resulting in manifest injustice. *Id.* at 631 (citing CR 61.02). Because Mother did not show how the child support issue was preserved for our review, we review this issue solely for palpable error resulting in manifesting injustice.

Mother's initial appellant brief argument begins with a general preservation statement indicating her arguments were preserved "through her counsel's requests at trial, and finally through her timely post-trial motion for relief under CR 52 and CR 59." (Appellant red brief, page 10). Mother provides a general reference to the several pages of the record (R., pp. 531–39) at which her post-trial motion (which did not address child support) appears. However, Mother fails to provide any specific references to the video recording where she raised any issues about child support during the trial, pressed the trial court for a ruling on child support, or requested an additional hearing to determine child support.[15]

_____

[15] Mother's appellant brief fails to fully comply with Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4) which requires that appellant brief arguments contain "ample references to the specific location in the record" and "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if

-26-

Father argues that the alleged error in not awarding child support was not preserved for review. He points out that Mother did not raise any issues about child support in her motion to alter, amend, or vacate. He also points out Mother did not specifically identify child support as an issue to be resolved at the February 2025 trial in her pretrial compliance or in motions filed shortly before trial.

Mother's reply brief does not correct her prior failure to cite to the record to show where the child support issue was raised to the family court. Instead, her reply brief appears to concede that the child support issue is unpreserved, especially since she argues therein that the family court's failure to make explicit findings on the children's reasonable needs amounted to palpable error resulting in manifest injustice. We leniently construe this argument as an implicit request for palpable error review. *See, e.g.*, *Oakley v. Oakley*, 391 S.W.3d

---

so, in what manner." We are generally satisfied that Mother raised her appellate issues about custody and timesharing to the family court through her post-trial motion and during the trial and therefore review the custody decision under the generally applicable standard of review. However, Mother failed to provide a proper preservation statement, with a specific reference to the record, identifying if or how the child support issue was raised to the family court in her initial appellant brief.

We are not aware of Mother's appellate counsel having a prior history of failure to comply with appellate briefing rules and we decline to impose further sanctions. *See* RAP 10(B) and RAP 31(H)(1). Nonetheless, the failure to identify where in the record the child support issue was raised to the trial court and preserved for review means that the child support issue may be considered unpreserved. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved.").

377, 380 (Ky. App. 2012) (whether appellant provides a preservation statement identifying how an issue was presented to the lower court and thus preserved for review "has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.").[16] *See also generally J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 153 (Ky. App. 2024).

Despite Mother's seeming concession that the child support issue was not properly preserved, Mother had requested child support early in the proceeding. However, she failed to bring this issue to the family court's attention shortly prior to trial or to press for a ruling on child support at trial or in her motion to alter, amend, or vacate. We summarize child support-related filings in the record to aid us in determining whether the family court committed palpable error in declining to award either party child support in the decree.

### Family Court's Awarding No Child Support in Decree Was Not a Palpable Error Resulting in Manifest Injustice Under the Unique Facts of this Case

Mother's divorce petition, filed in May 2023, contained a statement indicating that child support should be set under the Kentucky child support guidelines. Several weeks later, Mother filed a Motion for Temporary and

---

[16] *Oakley*, 391 S.W.3d 377, predates the adoption of our Rules of Appellate Procedure. However, it applies substantially similar provisions from then-effective Rules of Civil Procedure regarding preservation statements and other briefing requirements. *See id*. at 378–80. Its reasoning remains sound.

Permanent Child Support. She attached a supporting affidavit, child support worksheets, and recent pay stubs. In late December 2023, the family court entered an Agreed Order stating: "Child support shall be $3,418.00 per month based on the current parenting time schedule, work-related childcare costs, Catherine's [Mother's] cost to cover the children's insurance, and each party's current income." (R., p. 131). The family court characterized this agreed order as a temporary child support order in the divorce decree.

Father filed a motion to modify child support, which was set for a hearing in late October 2024. A couple of weeks prior to the scheduled hearing, Mother filed an exhibit list indicating she would present a child support worksheet and relevant documents about income and child-related expenses. She attached to this exhibit list paystubs, other documents about the parties' incomes, and documentation of childcare and health insurance costs. However, shortly before the scheduled hearing date, Father withdrew his motion to modify child support.

Meanwhile, the court had recently entered the parties' Mediated Partial Agreed Order of Marital Settlement resolving property issues such as division of the marital estate and assignment of debts, but reserving issues regarding child custody, support, and parenting time.

In early November 2024, the family court entered an order setting a February 13, 2025, trial date. The trial order stated that if child support was at

issue, the responding party must file paystubs or other proof of current income, tax returns, and an affidavit about his/her monthly expenses and income at least 24 hours before trial.

As the trial date approached, Mother filed a motion identifying issues for trial including custody and parenting time. She did not specifically state that child support was at issue in this motion. Nor did she update the information about income and other financial matters she had filed back in October 2024 by filing similar, more recent documents into the record.

A few days before trial, Mother filed a witness and exhibit list indicating she would be offering income evidence and evidence about costs including work-related childcare and the children's health insurance. However, neither party filed into the record paystubs or tax returns or affidavits about their monthly expenses in the days leading up to trial. Mother claims that the family court improperly limited her inquiry into financial matters such as the parties' respective income at trial.

After trial, both parties and the children's GAL submitted proposed judgments with findings of fact and conclusions of law. Mother's proposed findings and judgment, like those proposed by Father and the GAL, did not address child support, instead focusing on child custody and parenting time issues.

The court declined to award either party child support in the decree. It found both parents were employed as physicians and that: "Neither party reports any issues in meeting the financial needs of the children." (Page 12 of decree, R., p. 512). Mother did not raise any issues about child support in her motion to alter, amend, or vacate.

Seemingly conceding that the child support issue was not properly preserved for our review, Mother argues in her reply brief that the family court's declining to award child support violated KRS 403.211(5) and resulted in palpable error. KRS 403.211(5) states: "When . . . the court is otherwise presented with insufficient evidence to determine gross income, the court shall order child support based upon the needs of the child or the previous standard of living of the child, whichever is greater."

Mother argues the family court failed to inquire into the children's needs as required by KRS 403.211(5) after refusing to hear testimony about the parties' income. She suggests the family court's finding that both parties have the financial resources to meet the children's needs is not supported by evidence considering that the family court refused to admit testimony or other evidence at trial about the parties' incomes. She contends this amounts to palpable error resulting in manifest injustice.

While we express no opinion on whether the family court may have otherwise erred if the issue were properly preserved, we reject Mother's assertion that the family court's awarding nothing in permanent child support amounted to palpable error resulting in manifest injustice under the unique facts here.

The family court found that both parents were financial supporters of the children during the marriage. The court specifically found it had entered an agreed order in December 2023, setting temporary child support at $3,418.00 per month, which included "work-related childcare expenses and insurance premiums paid by Petitioner [Mother] on behalf of the children." (Page 12 of decree, R., p. 512). The family court also found that Mother incurred childcare expenses of $800.00 per week and $500.00 per month for gas. The court further found that the parties agreed to equally divide all unreimbursed medical expenses for the children and that the parties had agreed on division of their marital assets.

In a significant change from the time of the agreed order about temporary child support, the court awarded the parties equal timesharing in the divorce decree. The court concluded that each parent was entitled to select the children's caregiver(s) during his/her parenting time. The court also concluded that each parent was responsible for any work-related childcare expenses during his/her parenting time. And it concluded the parties must split equally the children's unreimbursed health expenses and the children's extracurricular

activities costs and Father must reimburse Mother for one-half of the children's

health care insurance premiums. It further ruled that, so long as both children

could be claimed as dependents, each party could claim one child on his/her tax

return each year.

In short, despite Mother's claims that the family court failed to make

any findings about the children's needs, the family court made findings and

conclusions about many costs of providing for the children (including childcare,

health expenses, and extracurricular activities) and essentially ordered the parties

to split these costs equally along with awarding equal parenting time. Moreover,

its awarding equal parenting time (in contrast to Mother's having substantially

more parenting time than Father previously) was a valid consideration in the

court's determination of what amount, if any, must be awarded as child support.

*See generally* KRS 403.2122 (regarding shared parenting time credit).

Furthermore, although Mother may challenge the family court's

finding that neither party reported issues in meeting the children's financial needs,

we cannot say that this finding amounted to palpable error. Neither party made an

explicit request for an award of child support in documents filed between the early

November 2024 trial order and the February 2025 order, and no one discussed

child support in their proposed judgments. Also, since neither party had recently

filed current income and expense documentation prior to trial as required by the

trial order for child support determination, we discern no palpable error in the family court's limiting the admission of evidence about jobs and income at trial, instead focusing on hearing evidence related to custody and parenting time.

Furthermore, although we are sympathetic to Mother's assertion that simply finding both parents are doctors is not enough by itself to merit declining to award child support, we discern no palpable error under the facts here in the family court's conclusion that both parties "have the financial resources to meet the needs of the children while in their possession under an equal time schedule." (Page 22 of decree, R., p. 522). This is especially true since both parties are responsible for paying childcare costs for their parenting time pursuant to the decree. Moreover, although the family court was not inclined to hear testimony about the parties' jobs or income at trial, other evidence in the written record shows that both parties generally had ample, six-figure employment earnings every year. Also, Mother has not alleged that either party recently lost a job or had otherwise recently incurred substantial financial difficulties.

So, under the unique facts here, the family court's declining to award either party child support while awarding both equal parenting time does not amount to palpable error resulting in manifest injustice. Thus, we must affirm the family court on this unpreserved issue.

Further arguments raised in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal. Nothing in this Opinion prevents either party from filing or prevailing on properly supported future motions to modify custody, parenting time, or child support, provided that applicable standards for modification are met.

## CONCLUSION

For the foregoing reasons, we AFFIRM.


ALL CONCUR.


BRIEFS FOR APPELLANT:              BRIEF FOR APPELLEE:

Louis P. Winner                    Jennifer L. Frederick
Crystal J. Mahoney                 Louisville, Kentucky
Louisville, Kentucky